JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

**08 CV 2490**

GLORIA E.N.E.

      Plaintiff,

 - against -

KOREA LINE CORPORATION,

      Defendant.
------------------------------------------------------------X

08 CV _____

ECF CASE

MAR 12 2008

U.S.D.C. S....N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, GLORIA E.N.E., (hereafter referred to as "Plaintiff"), by and through its

attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, KOREA LINE CORPORATION (hereinafter referred to as "Defendant"), alleges,

upon information and belief, as follows:

 1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the

breach of maritime contract of charter. This matter also arises under the Court's federal question

jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the

Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the

Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

 2. At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity, organized under, and existing by virtue of the law of Greece, and with a

principal place of business at Piraeus, and was at all material times the disponent owner of the

motor vessel "EMERALD" (hereinafter the "Vessel").

3.  Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of the laws of Korea with a place of business in Seoul, Korea and was at all material times the Charterer of the Vessel.

4.  By a charter party dated October 15, 2004 ("the charter party"), Plaintiff time chartered the Vessel to Defendant for about eleven to thirteen months. The charter party called for Defendant to pay hire to Plaintiff at the rate of $26,500 daily, including overtime, payable fifteen days in advance into the Plaintiff's nominated bank account. *See charter party attached as Exhibit 1.*

5.  Pursuant to the preliminary hire statement, Defendant's owed to Plaintiff $320,819.87. *See preliminary final hire statement attached as Exhibit 2.*

6.  To date, Plaintiff has received a payment from Defendant in the amount of $21,277.85 with respect to the outstanding amount due under the preliminary final hire statement.

7.  Defendant has failed to pay the remaining outstanding balance due and owing to the Plaintiff in the amount of $299,542.02.

8.  Against this outstanding balance due and owing on the preliminary hire statement, Defendant has purported to make various deductions from hire.

9.  Specifically, Defendant deducted $141,468.75 from hire following a decision by the Vessel's Master not to follow weather routing advice provided for him for the purposes of a voyage in March, 2005 between Sweden and Port Everglades, which resulted in a longer route. *See Exhibit 2.*

2

10.     Defendant also deducted $43,788.04 from the hire as the result of an alleged under-performance by the Vessel arising out of a voyage from Tampa to Port Suez. *See Exhibit 2.*

11.     Defendant further deducted $22,394.97 from the hire as a result of an alleged under-performance by the Vessel arising out of a voyage from Kohsichhang to Mina Saqr. *See Exhibit 2.*

12.     Clause Fifteen of the charter party sets out in detail the specific circumstances which allow for Defendant to effect deductions from hire. Neither the decision of the Vessel's Master not to follow weather routing advice as stated in Paragraph 10 herein nor the alleged under-performances by the Vessel as stated in Paragraphs 11 and 12 herein properly allow the Defendant to deduct hire. *See Exhibit 1.*

13.     Additionally, Defendant deducted $16,971.20 from the hire for peripheral items, including, but not limited to, Defendant's expenses and the Vessel's alleged defective machinery. *See Exhibit 2.*

14.     As a result of Defendant's breach of the charter party due to its failure to pay the outstanding hire due and owing to Plaintiff, Plaintiff has sustained damages in the total principal amount of $299,542.02 exclusive of interest, arbitration costs and attorneys fees.

15.     Pursuant to the charter party, all disputes are to be submitted to arbitration in London with English Law to apply.

16.     This action is brought in order to obtain jurisdiction over the Defendant and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

17.      Interest, costs and attorneys' fees are routinely awarded to the prevailing party
under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for
recovery of these items as part of an award in favor of the prevailing party.

18.      As best as can now be estimated, Plaintiff expects to recover the following
amounts at arbitration as the prevailing party:

| | | | |
|---|---|---|---|
| A. | Principal claim: outstanding hire | $ | 299,542.02 |
| B. | Estimated interest for 2 years at 7.5% compounded quarterly: | $ | 74,800.50 |
| C. | Estimated attorneys' fees and arbitration costs: | $ | 125,000.00 |
| **Total:** | | | **$ 499,342.52** |

19.      The Defendant cannot be found within this District within the meaning of Rule B
of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of
Civil Procedure, but, upon information and belief, Defendant has, or will have during the
pendency of this action, assets within this District and subject to the jurisdiction of this Court,
held in the hands of garnishees within the District which are believed to be due and owing to the
Defendant.

20.      The Plaintiff seeks an order from this Court directing the Clerk of Court to issue
Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules
for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any assets of the Defendant
held by any garnishees within the District for the purpose of obtaining personal jurisdiction over
the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$499,342.52** to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E.    That in the alternative, this Court enter judgment against the Defendant on the claims set forth herein;

F.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G.    That this Court award Plaintiff its attorney's fees and costs of this action; and

II.     That the Plaintiff have such other, further and/or different relief as the Court

may deem just and proper.

Dated: March 11, 2008
        New York, NY

                        The Plaintiff,
                        GLORIA E.N.E.

                        By:  Anne C. LeVasseur
                             Patrick F. Lennon
                             Anne C. LeVasseur
                             LENNON, MURPHY & LENNON, LLC
                             The GrayBar Building
                             420 Lexington Ave., Suite 300
                             New York, NY 10170
                             (212) 490-6050 – phone
                             (212) 490-6070 – fax
                             pfl@lenmur.com
                             acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )

               )     ss.:     Town of Southport

County of Fairfield )

    1.     My name is Anne C. LeVasseur.

    2.     I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

    3.     I am a partner in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

    4.     I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

    5.     The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

    6.     The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

    7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     March 11, 2008

           Southport, CT

                             Anne C. LeVasseur

                             Anne C. LeVasseur

Exhibit 1

# Time Charter

GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6ᵗʰ, 1913-Amended October 20ᵗʰ, 1921 ; August 6ᵗʰ, 1931 ; October 3ʳᵈ, 1946

1   *This Charter Party,* made and concluded in................. *Seoul, Korea...15ᵗʰ October,...19 2004*

2   Between..................*GLORIA E.N.E.*....................................................

3   Owners of the good *Greek flag*..~~Steamship~~/Motorship........*M.V. EMERALD*............of..................

4   of....27,527~~tons~~ gross register, and ....*15,430* tons net register, having engines of ........indicated horse power

5   and with hull, machinery and equipment in a thoroughly efficient state, and classed...*LLOYDS REGISTER*............

6   at....of about...*57,628* cubic ~~meter feet~~-bale grain capacity *in main holds available for cargo,* and about..*46,739 metric* .tons ~~of 2240 lbs.~~

7   ~~deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,~~

8   ~~allowing a minimum of fifty (one)~~ on a draft of *11.507 meters...* ~~feet....inches~~ on *salt....* summer freeboard, inclusive of permanent bunkers

9   which are of the capacity of about......Tons of fuel, and capable of steaming, fully laden, *throughout the currency of this Charter Party* under good weather

10  conditions about *13...*knots on a consumption of about *23metric..*tons *fully laden of IFO 180CST at sea* ~~best Welsh coal best grade fuel oil best grade Diesel oil,~~

11  Now *..trading (see also description as guaranteed in attached Clause 44)*..............

12  ..*and................KOREA LINE CORPORATION*.........................Charterers of the City of ..*Seoul, Korea....*

13  *Witnesseth,* That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14  ~~about~~ *period time charter of about 11/13 months (about means +/- 15days in Charterers option) via safe berth(s),*

15  *safe anchorage(s), safe port(s), always afloat always within Institute Warranty Limits including harmless lawful cargoes. NAABSA as per Clause 6 of NYPE, River Plate only - If goes aground original performance warranty to be voided. Vessel to trade world wide with generals and lawful harmless bulk cargoes including cement, cement clinker, pet coke, Sulphur and salt* within below mentioned trading limits.

16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter *but not to Israel or Israeli connected or Israel registered Charterers,* but Charterers remaining responsible for

17  the fulfillment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.*

18  Vessel to be placed at the disposal of the Charterers, ~~at~~ *on dropping last outward sea pilot one safe port Inchon, at*

19  *any time day or night, Sundays and holidays included* .................................

20  ~~in such dock or as such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~

21  ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5,~~ *on vessel's delivery time, vessel's holds to be clean swept/washed down by fresh water and dried up so as to receive Charterers intended cargo in all respects free of salt, rust scale and grain residues and previous cargo residues to the reasonable satisfaction of Charterers independent surveyors should the vessel not be approved by*

22  *the surveyors then the vessel to be placed off-hire from failure of inspections until vessel is fully accepted and any additional expenses thereof to be for Owners account.* Vessel on her delivery to be ~~ready to receive cargo with clean swept holds and~~ tight, staunch, strong and in every way fitted for the *ordinary cargo* service, having water ballast, *Cranes* ~~winches~~ and

23  donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the *cranes* ~~winches~~ at one and the same

24  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25  dise, ~~including petroleum or its products, in proper containers,~~ excluding...*See Clause 37*.....................

26  ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

27  ~~all necessary fittings and other requirements to be for account of Charterers),~~ in such lawful trades, between safe port and/or ports ~~in British North~~

28  ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~ *Trading exclusions: (See also clause 68)*

1

29  Mexico, and/or South America ........................................................and/or Europe
30  and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding
    Magdalena River, River St. Lawrence between
31  October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season: White Sea, Black
    Sea and the Baltic,
32  ...............................................................................................................................
33  ...............................................................................................................................
34  ...............................................................................................................................
35  as the Charterers or their Agents shall direct, on the following condition:
36      1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees
    of the Crew *and gangway and watchmen other than compulsory*, shall pay for the
37  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water
    and maintain her class and keep
38  the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service. *Compulsory*
    *watchmen to be always for Time charterers account*
39      2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port
    Charges, *all compulsory/customary* Pilotages , Agencies, Commissions,
40  Consular Charges (except those pertaining to the Crew) *watchmen for cargo to be for Charterers' account and*
    *gangway watchmen to be provided by Owners, but where compulsory to employ gangway watchmen from ashore,*
    *the expenses to be for Charterers' account* and all other usual expenses except those before stated, but when the
    vessel puts into
41  a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners.
    Fumigations ordered because of
42  illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while
    vessel is employed under this
43  charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on
    charter for a continuous period
44  of six months or more.
45      Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special
    trade or unusual cargo, but
46  Owners to allow them the use of any dunnage and shifting boards *and any other fittings* already aboard vessel.
    Charterers to have the privilege of using shifting boards
47  for dunnage, they making good any damage thereto
48      3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and
    pay for all fuel remaining on
49  board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than
    ....................tons and not more than
50  ....tons and to be re-delivered with not less than ..................tons and not more than ............. ........tons. *See Clause 35.*
51      4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *US$26,500.- daily*
    *including overtime payable 15days in advance into Owners' nominated bank account. Bank charges if any to*
    *be for Charterers account.*
52  ........United States Currency per ten on vessel's total deadweight carrying capacity, including bunkers and
53  stores, on ..............summer freeboard, per Calendar Month, commencing on and from the day of her delivery, as
    aforesaid, and at
54  and after the same rate for any part of a month *day* ; hire to continue until the hour of the day of her re-delivery in
    like good order and condition, ordinary
55  wear and tear excepted, to the Owners (unless lost) at *...on dropping last outward sea pilot one safe port Aden*
    */Japan range including full Indonesia/Malaysia/Vietnam/Thailand/PRC/Philippine/Taiwan or Charterers option*
    *Boston/Galveston range or Charterers option Skaw/Passero range including full Med/Black Sea range or*
    *Charterers option Casablanca/Durban range or Charterers option Vancouver, BC/Buenaventura range, at any*
    *time day or night, Sundays and holidays included*..................................................
56  unless otherwise mutually agreed. Charterers are to give Owners not less than *20/15/10/7/5* days *approximate*
57  *and 3/2/1 days definite notice of vessel's redelivery date. Expected redelivery port to be advised together with the*
    *20day approximate redelivery notice and definite redelivery port to be declared together with the 10 day*
    *approximate redelivery notice* notice of vessels expected date of re-delivery, and probable port.
58      5. Payment of said hire to be made in *Owners nominated bank account in Greece* New York in cash in
    United States Currency, *every 15days* semi-monthly in advance, and for the last half month or .
59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the

2

balance day by day, as it becomes

60  due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61  hire or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62  terers without prejudice to any claim they (the Owners) may otherwise have on the Charterers.Time to count as 7 a.m. on the working day

63  following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they

64  to have the privilege of using vessel at once, such time used to count as hire.

65  Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, *against captain's or Owner's written/telex confirmation* by the Charterers or their Agents, subject

66  to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67  of such advances.

68  6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place *or anchorage in port or elsewhere* that Charterers or their Agents may

69  direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70  lie aground.

71  7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72  accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73  tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodations allow, Charterers

74  paying Owners ............... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are

75  incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense. *No passengers allowed.*

76  8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77  *equipments* boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78  agency ; and Charterers are to load, stow, and trim *lash and secure tally and discharge* the cargo at their expense under the supervision of the Captain, who is to sign *or when required by Charterers authorize the Charterers and/or their agents to sign on his behalf* Bills of Lading for

79  cargo as presented, *in strict* in conformity with Mate's or Tally Clerk's receipts. *but Charterers agree to remain responsible for any consequences should these not conform with Mate's receipts.*

80  9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82  10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83  with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84  rate of $~~4.00~~ $20.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85  Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling. *Charterers to pay Owners USD1,200.– per month or pro rata for normal cable/entertainment and victualling excluding alcoholic drinks and cigarettes.*

86  11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87  Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88  terers, their Agents or Supercargo, when required, with a true copy of daily *deck and engine* Logs , showing the course of the vessel and distance run and the con-

89  sumption of fuel *as well as revolution of main engine and velocity of and direction of wind and sea, all in English*

*Language.*

90    12. That the Captain shall use diligence in caring *for the cargo and* for the ventilation of the cargo.

91    13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~

92    ~~........................................................................................................................................................~~

93    ~~on giving written notice thereof to the Owners or their Agents~~ .................... ~~days previous to the expiration of the first-~~
~~named term, or any declared option.~~

94    14. That if required by Charterers, time not to commence before ..*0001 hours 28th October,, 2004*........and
should vessel

95    not have *delivered* ~~given written notice of readiness~~ on or before    *2400 hours 27th October, 2004* ~~but not later than~~
~~4 p.m.~~ Charterers or

96    their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97    15. That in the event of the loss of time from deficiency, *and/or default and/or strike* of men or *deficiency of*
stores, fire, breakdown or damages to hull, and machinery or equipment, *unless such breakdown or damaged*
*caused by Charterers and/or their servants and/or their agents*

98    grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting
bottom or by any other cause

99    preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost *and all extra*
*directly related expenses maybe deducted from the hire;* and if upon the voyage the speed be reduced by

100    defect in or breakdown of any part of her hull, machinery or equipment *unless such defect or breakdown caused by*
*Charterers and/or their agents and/or their servants,* the time so lost, and the cost of any extra fuel consumed in
consequence

101    thereof, and all *proven* extra expenses shall be deducted from the hire.

102    16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or
being last heard of) shall be

103    returned to the Charterers at once. That act of God, enemies, fire, restraint of Princes, Rulers and People, and all
dangers and accidents of the Seas,

104    Rivers, Machinery, Boilers and Steam Navigation and errors of Navigation throughout this Charter Party, always
mutually excepted.

105    The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in
distress and to deviate for the

106    purpose of saving life and property.

107    17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred
to three persons at *London* ~~New York,~~

108    one to be appointed by each of the parties hereto, and the third by the two so chosen ; their decision or that of any
two of them, shall be final, and for

109    the purpose of enforcing any award this agreement may be made a rule of the Court. The Arbitrators shall be
commercial men *and members of the L.M.A.A see further arbitration Clause 30..*

110    18. That the Owners shall have a lien upon all cargoes, and all sub-freights, *sub-hire* for any amounts due
under this Charter, including General Aver-

111    age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and
any overpaid hire or excess

112    deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance
incurred by them or their agents which

113    might have priority over the title and interest of the Owners in the vessel

114    19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners'
and Charterers' expenses and

115    crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rules 1 to 15, inclusive, 17 to~~
~~22, inclusive, and Rules F of~~

116    York-Antwerp Rules *1990 and subsequent amendments,* ~~1924~~ at ~~such port or place in the United States~~ *in London*
~~as may be selected by the carrier, and as to matters not provided for by them.~~

117    ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign~~
~~currencies shall be exchanged into~~

118    ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign~~
~~currency shall be converted at~~

119    ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the~~
~~ship. Average agreement or~~

120    ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods.~~
~~Such cash deposit as the carrier~~

4

121 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~

122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~

123 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~

124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and~~ refunds or credit balances, if any, shall be paid in

125 ~~United States money.~~ *Charter hire not to contribute to General Average.*

126        ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

127 ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~

128 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~

130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131 ~~ships belonged to strangers.~~

132        Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.  *Hire not to contribute to General Average.*

133        20. Fuel used by the vessel while off-hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed as to quantity, and the

134 cost of replacing same, to be allowed by Owners.

135        21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

137 ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138 *No drydocking except in case of emergency or by mutual agreement.*.........................................

139 ...............................................................................................................................

140        22. Owners shall maintain the gear of the ship as fitted, providing gear (for all *cranes* ~~derricks~~) capable of handling lifts up to *their maximum capacity in accordance with the description Clause* ~~up to three tons, also~~

141 ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~

142 ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel *power and electric light as on board and in cargo holds sufficient for night work in all holds simultaneously.* ~~lanterns and oil for~~

143 ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~  The

144 Charterers to have the use of any gear on board the vessel.

145        23. Vessel to work night and day, if required by Charterers, and all *cranes* ~~winches~~ to be at Charterers' disposal during loading and discharging ;

146 ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~

147 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~

148 ~~port, or labor unions, prevent crew from driving winches, shore~~ *cranemen* ~~Winchmen~~ to be paid by Charterers. In the event of disabled *crane* ~~winch~~ or *cranes* ~~winches~~, or

149 insufficient power to operate *crane* or *cranes* ~~winches~~; Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time *and extra expenses; including standby expenses,* occasioned

150 thereby. *Unless such disablement or unsufficiency is caused by Charterers and/or their agents and/or their servants. In such case vessel to remain on hire.*

151        24. ~~It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~

152 ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled " An Act relating to Navigation of Vessels,~~

153 ~~ate," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to~~
the following clauses, both

154 ~~of which are to be included in all bills of lading issued hereunder :~~

155                                                    ~~U.S.A. Clause Paramount~~

156 ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United~~
States approved April

157 ~~16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a~~
surrender by the carrier

158 ~~of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term~~

159 ~~of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160                                                    ~~Both to Blame Collision Clause~~

161 ~~If the ship comes collision with another ship as a result of the negligence of the other ship and any act, neglect or~~
default of the

162 ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners~~
of the goods

163 ~~carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her~~
owners in so far as

164 ~~such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or~~
payable by

165 ~~the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the~~
other or non-

166 ~~carrying ship or her owner as part of their claim against the carrying ship or carrier.~~

167          25. The vessel shall not be required to *force ice or follow ice-breakers* enter any ice-bound port, or any port
where lights or light-ships have been or are about to be with-

168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on
account of ice to safely enter the

169 port or to get out after having completed loading or discharging.

170          26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The Owners to
remain responsible for the

171 navigation of the vessel, *acts of pilots and tugboats,* insurance, crew and all other matters, same as when trading for
their owners account.

172          27. A commission of *1.25* ~~2 1/2~~ per cent is payable by the Vessel and Owners to *Howe Robinson Shipbrokers,*

173 *London and 1.25 percent to Everwise International Co., Ltd. Seoul, Korea .........................*

174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175          28. An address commission of *2.5* ~~2 1/2~~ percent payable to... *Charterers* ........on the hire earned and paid
under this Charter.

*Attached rider clauses Nos. 29 to 86 inclusive together with USA/Canadian/UK/General clause paramount(as
appropriate), New Jason Clause, New Both to Blame Collision Clause, and Conwartime 93 War Risk Clause to be
considered part of this Charter Party and all Bills of Lading shall be subject to these clauses.*


Owners                                        Charterers

6

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

## Clause 29.    Additional Fittings

Padeye clause

Vessel is padeye fitted and Charterers have option to weld additional padeyes without affect and/or damage to vessel's structure and ballast tank coatings, and subject to master's satisfaction. Additional padeyes to be removed by Charterers, at owners option, prior to redelivery at Charterers time and expense and any damages to be made good including ballast tank coatings, providing owners/master can prove such damage was incurred by welding during the charter party, to master's satisfaction. Alternately owners option charge Charterers USD15.00 per padeye's removal

## Clause 30. Arbitration

Deleted.

## Clause 31.    Arrest

Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim against or any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as a result of such arrest, and the Owners shall reimburse to the Charterers any expenditure which they may incur under this Charter in respect of any period during which by virtue of the operation of this Clause no hire is payable.

This clause shall not apply should the arrest be caused through any fault on this part of Charterers.

## Clause 32 Asian Gypsy Moth

Vessel is free from Asian Gypsy Moth, its eggs or larvar and vessel is not black listed by trading countries due to Asian Gypsy Moth infestation. Owners guarantee vessel has not called any C.I.S pacific or Siberian ports for last three years and free of A.G.M Owners guarantee on delivery vessel meets all agriculture Canada plant protection division and USDA protection and quarantine office regulations. Furthermore owners guarantee vessel is free of Asian gypsy moth eggs or larvae or any form of Asian gypsy moth life.

Should vessel be found to have the same, vessel to be placed off-hire until vessel is cleared by Canadian/US authorities.

## Clause 33 Bills of Lading

No liner/waybills/through Bills of Lading to be issued.

## Clause 34 Bulldozers

Owners guarantee vessel is suitable for grab discharging/bulldozer operation no obstructs/pillars in vessels holds. In case of bulldozer option in vessels holds same to be in accordance with vessel that strength, any damaged occurred affecting vessels stability same to be repaired in accordance with vessels class and vessel still on-hire except where/care damage. Bulldozers to be always of rubber wheels.

## Clause 35 Bunkers

Charterers to pay first hire payment together with bunkers on delivery about 840MT for IFO(180CST) and about 65MT of MGO within 3 banking days after vessel's delivery and receipt of original Charter Party and hire invoice in Seoul. Prices for bunkers USD200 for IFO and USD400 for MGO- on redelivery bunkers about same quantities and same prices both ends.

## Clause 36. Cargo Claims/P&I Club

Owners guarantee that the vessel is entered and shall remain entered in a Protection & Indemnity Association, which is a member of the Group of International P & I Clubs, for the duration of this Charter Party.    Entry shall include, but not to be limited to, ordinary cover for cargo claims.

In the case of damage to and/or loss of cargo carried on the vessel in which Owners and/or Charterers' liability could be involved under the terms of this Charter Party, as the case may be, the Owners and/or the Charterers shall on request grant time extension for suit in each and every occurrence with should not be unreasonably withheld. So granted extensions shall not prejudice the ultimate responsibility of both parties. Liability for cargo claims, as between Owners and Charterers, shall be apportioned as specified by the interclub Produce Exchange Agreement effective from February 1996, and its subsequent amendments.

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

Owners' P & I Club : L.S.S.O
Charterers' P & I Club: BRITANIA

Vessel's classification society to be a member of the IACS.

## Clause 37 Cargo Exclusion
Acids, ammonium nitrate(excluding fertiliser grade), ammunition, arms, asphalt and pitch in bulk, blasting caps, bombs, calcium carbide, calcium hydrochloride, charcoal, copra, copra expellers, copra products, cotton, creosoted goods, dangerous hazardous injurious cargoes, detonator caps, dynamite, explosives, ferro silicon, fishmeal, hbi, hides, inflammable cargo, livestock, logs, mahogany, manioc, manioc pellets, motor blocks, motor spirits, naphtha, nuclear and radioactive materials, oil cakes, pig iron, pool iron, pool steel, pyrites, reduced iron ore pellets, resins, scrap(see below), seedcakes, sodium sulphate, sunflower seeds, sunflower seed expellers, tar in bulk, int, turnings, urea(but fertiliser grade allowed), and no regular coastal ore trading.

-Cement/C.Clinker clause :
a) Charterers undertake to use holds as less as possible, provided vessel's stability trim and stress permitting;

b) should any additional/special washdown of holds before loading be required/ recommended by independent surveyors appointed by Charterers at their expenses, such washdown to be arranged by Charterers at their time and expenses;

c) vessel is fitted with two grain holes at each hatch cover (one fore strboard. side and one aft port side diam 700 mm) suitable to load cement with closed covers.

D) after loading, charterers undertake to arrange at their time and expense any special/extra trimming and/or leveling of cargo to master's satisfaction and also charterers to give reasonable time to allow for the cargo to settle and any air to escape before vessel's departure from loading berth/port.

E) charterers undertake to supply onboard, at their expense, dunnages and/or other materials which master considered necessary to provide safe protection from contamination by loading/discharging bulk cement/c.clinker.

F) charterers are allowed to use ship's crew to perform sweeping/cleaning against paying USD1250per hold as Intermediate hold cleaning or I.L.O.H.C.

g)during load and or discharge operation aircondition tampers and the rest of the mechanical supply fans/ ventilators adjacent to the cargo holds to be sufficiently protected to masters satisfaction.

H)tracks of the bulldozers which will be utilized for the discharge operation to be rubberized type and the top tank strength not to be exceeded by the total weight of the cargo and bulldozers.

- Scrap clause
Charterers have liberty to carry two cargoes of non oily hms 1 & 2 and/or shredded scrap (xmbt)during the entire period, on following conditions.

1. Charterers undertake that the loading of first layer of scrap in each hold to be always shredded scrap to masters reasonable satisfaction and same not to be released until touching tank top and not to be dumped and dropped during loading.
Thereafter sufficient loads of scrap to be lowered as close as possible to the bottom of each hold, so as to provide a proper flooring and cushion to master's satisfaction, which shall not be unreasonably withheld.

2. plates and structurals, if any, always to be lowered into vessel's holds.

3. charterers to arrange cushion rafts on deck to provide safe protection of vessel from damage by loading/discharging scrap. Charterers and/or their servants to show due diligence when loading and discharging in order to prevent pieces of scrap from falling on vessel/vessel's deck.

4. charterers will be responsible for any time loss and expenses incurred for any special preparation/cleaning/washing /repainting of holds if necessary.

5. prior to loading scrap, hold condition survey tb conducted by an independent surveyor, approved by owner P and I club,

8

## RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

at Charterers' time/expenses and same to be done immediately after completion of discharge.

Concentrates clause
cargo always to be loaded, stowed, carried and discharged in accordance with local and national regulations and in full compliance with IMO recommendations.
Prior to commencement of loading concentrates, the intended cargo is to be subjected to an independent analysis for account of shippers/Charterers.
Appropriate certificates indicating actual transportable moisture limit (as defined by the I.M.O) on shipment to be furnished to master. Charterers warrant that intended cargo will comply in all respects with all relevant national and international regulations.

Salt /Sulphur clause
In case of salt or sulphur loading, charterers have the option to load salt or sulphur but not as a last cargo, also not as consecutive cargoes and maximum15 holds in total.
Charterers are to provide lime powder brushes etc at their own account and time and arrange lime coating the holds before commencement of loading to masters satisfaction and to pay $ 800 per hold for lime application. Charterers to pay $5000 for washing down lime coating after completion of discharge at their own account time and risk, up to grain loading standard to master's satisfaction .
And after "lime application insert "by crew" and after "washing down lime coating" insert "by crew" and in the end "chtrs have the option to arrange shore labour for lime coating/lime removal"

petcoke
in case petcoke loaded then intermediary cleaning for petcoke to be usd1250 per hold and same not to be last cargo under this charter party.

### Clause 38 Certificates/Vaccinations

Owners are obliged to deliver and maintain throughout the currency of this of this Charter Party the vessel, her crew and anything pertaining here to supplied with up-to-date and complete certificates (including Oil Pollution Certificates), approvals, equipment and fittings, enabling the vessel and her crew to trade within the trading limits and to load, carry and discharge all cargoes permitted under this Charter Party.

Officers and crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates to be available on board, enabling the vessel to obtain radio free pratique.

If requested, Owners to provide Charterers with copies of any and all such certificates/approvals.

Any time lost and all extra expenses resulting from Owners' non compliance with the above to be for Owner's account and may be deducted from hire.

### Clause 39. Crew Service .

With reference to Clause 8 of this Charter Party " customary assistance" shall include but not be limited to:
a) All opening and closing of hatches, when and where required, if permitted by local regulations.
b) Raising and lowering of derricks and rigging cranes, if fitted, and /or gangways in preparation for loading and discharging if permitted by local regulations.
c) Shaping up vessel's holds/hatches and cranes, if fitted, as much as possible prior arrival at loading and/or discharging places so as to immediately commence loading and/or discharging operations subject to weather conditions and the safety of the crew.

The above services shall be considered as a minimum and shall in no way be construed as an alternative to or reduction in the standard of services from Officers and crew required under this Charter Party.

### Clause 40 Deck Cargo

Deck cargo to be carried at no risk to Owners/vessel and Bills of Lading to be of deck type.

### Clause 41 Deductions

Charterers are entitled to deduct from the last sufficient hire payment the estimated Owners' disbursements USD2,000 per port (but maximum USD8,000 in total) as well as estimated value of bunkers on redelivery.

9

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

## Clause 42 Delivery of Cargo Against L.O.I
Owners to allow Charterers to discharge cargoes without presentation of the original Bills of Lading by providing with Letter of Indemnity in accordance with Owners P and I Club form and wording before discharging. Letter of indemnity to be signed by Charterers only.

## Clause 43 Delivery/Redelivery Time
Time on delivery / redelivery for hire to be based on Greenwich Mean Time.

## Clause 44. Description of the Vessel Clause
MV EMERALD 46,739 MT- SELF TRIMMING BULKCARRIER
OWNERS: GLORIA E.N.E.
CALL SIGN: SYCN INMARSAT TLX/TEL 11-30-134 (EMER X)
ALPHA CODE: ZDAC
GREEK FLAG BUILT: 1986 CLASS: LLOYDS REGISTER
4 X 25 MT CRANES, AUSTRALIAN LADDER FITTED, CO 2 FITTED FOR FIRE FIGHTING ONLY
NO.2 AND 4 CARGO HOLDS MAY BE EMPTY, STRENGTHENED FOR ORE, LUMBER FITTED
CONTAINER CAPACITY OF 604 TEUS OR 232 FEUS PLUS 140 TEUS
SUMMER D.W.T. 46,054 LT (46,739 MT) ON 11.507 M (37.75 FT)
TPI: 134.8 LT (136.9MT) (TPC:53.9) ALL SUMMER SALT WATER
LOA: 189.20M (620 FT 1.3/16") BEAM: 32.20 M (105 FT - 7.7/8")
NATIONAL TONNAGE: GROSS 27527 NET 15430
PANAMA TONNAGE: GROSS 28152 NET 22415
SUEZ TONNAGE: GROSS 27852 NET 24153
5 HOLDS, 5 HATCHES (FOLDING TYPE OPERATED BY HYDRAULIC CYLINDERS)

HATCH DIMENSIONS MAX CARGO LOAD 100% GRAIN - CUBIC 100% BALE
1 13,685X16M 13,550 MT 9,767.3M3 344,929FT3 9,300M3
2 20,125X16M 10,540 MT 12,327.2 435,331 11,800
3 20,125X16M 17,100 MT 12,330.6 435,451 11,800
4 20,125X16M 10,660 MT 12,475.8 440,579 11,900
5 14,490X16M 14,880 MT 10,727.1 378,824 10,300
57,628 2.035,114 55100

HOLD DIMENSIONS: CLEAR FLAT BOTTOM DIMENSIONS EXCLUDING CORREGATIONS AT TANKTOPS
1) 25.2 X 23.0A 19.2M 10F
2) 26.6 X 23.4
3) 26.8 X 23.4
4) 27.8 X 23.4
5) 26.2 X 11.8A 20.0M 23F
EXTREME:    1 + 5) 26,565 X 32.2
   2 + 3 + 4) 28.98 X 32.2
TANK TOP STRENGTHS: 1, 3 & 5.23 MT/M2 NOS. 2 & 4:14.2 MT/M2
HATCH COVER STRENGTH 3 MT/M2 (HATCHES 1 TO 5)
WEATHER DECK STRENGTH (EXCLUDING CROSS DECK BETWEEN HATCHES): 3.30 MT/M2
HATCH COAMING HEIGHT AT CENTRE LINE = 1.2 M
DISTANCE COAMING TO RAIL = 8.1 M
DISTANCE HATCH 1 FORE PART TO HATCH 5 AFT PART = 125.7 M
DISTANCE BOW TO AFT END OF AFTMOST HATCH COAMING = 486 FT
HEIGHT OF HOLDS UPTO HATCH COAMINGS TOP = 16.61 M
OUTREACH OF CRANES AND BEYOND RAIL = 8 M
DISTANCE FRM WATER LINE TO TOP OF HATCH IN FULLY BALLASTED CONDITION: 10.5M HOLD
3 FLOODED
DISTANCE FRM WATER LINE TO TOP OF HATCH IN NORMAL BALLASTED CONDITION: 13.2M FULL
BUNKERS
DISTANCE KEEL TO DIRECTION FINDER MAX. 42.521 (139.5 FT) WHEN D.F. RETRACTED
39.121 (128.35FT)
TANK TOPS ARE NOT SQUARE WITH HOLDS
TOP SIDE TANKS ARE HOPPERED WITH TOPSIDE BALLAST TANKS
HEIGHT OF CRANE PEDESTALS ABOVE DECK:

10

## RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

1) 9.75 M - (TO ACCESS PLATFORM 7.8M)
2-4) 10,40 M - (TO ACCESS PLATFORM 8.5M)
DISTANCE HATCH COVER ABOVE DECK 2.8 METRES
NO OBSTRUCTIONS ON DECK
PADEYES FITTED
HATCH COVERS HYDRAULIC FORE AND AFT FOLDING TYPE

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
NO GAS OIL CONSUMPTION AT SEA EXCEPT IN/OUT PORTS/MANOUVRING IN CONFINED/NARROW
WATERS AND IN SEVERE WEATHER CONDITIONS
PORT CONSUMPTION: 2.5 MT GAS OIL DMA ISO 8217 1996 PER 24 HOURS IDLE, OR
2.5 MT GAS OIL DMA ISO 8217 1996 PER 8 HOURS ALL GEAR WORKING
TANK CAPACITIES:BASIS 100 PCT 1785 MT IFO AND 150 GAS OIL DMA

OTHER SPEEDS/CONSUMPTION WITHOUT GUARENTEE
14 KNOTS ON 28.5 MT IFO LADEN OR 23 MT BALLAST
12 KNOTS ON 19 MT IFO LADEN OR 13.5 KNOTS ON 18.5 MT IFO BALLAST

A.FULL STYLE OF ORIGINAL/DISPON OWNRS (ADD/TEL/FAX/MIC):
  GLORIA E.N.E.
  C/O NEREUS SHIPPING S.A
  AKTI MIAOULI STREET 35-39
  185-35 PIRAEUS
  GREECE
  TE: +30 210 4292262 / 6
  FX: +30 210 4292334 / 466
  TX: 212245 AND 211451
  E-MAIL: NEREUSHIP@OTENET.GR

B.DWT(SUMMER/TROPICAL/WINTER)/GRT/NRT/LOA/BEAM/DEPTH MOLDED/
  BREDTH MOLDED/TPC:
  SUMMER DEADWEIGHT:46.793 MT
  WINTER DEADWEIGHT:45.507 MT
  TROPICAL DEADWEIGHT : 48.801 MT
  GRT: 27.535 T
  NRT: 15430 T
  LOA: 189,20 MTR
  BEAM: 32,2 MTR
  DEPTH: 16,30 MTR

C.STRENGTH OF TTOP/DECK/H.COVER:
  NO 1-3-5 CHS 25 MT/M2-3,3 MT/M2-3,0 MT/M2
  NO 2-4  CHS 14,2 MT/M2-5,3 MT/M2-3,0 MT/M2

D.GR/BL CAPA OF EACH HOLD:
  NO 1CH  9767,3/9300  CM
  NO 2CH  12327,2/11800 CM
  NO 3CH  12330,6/11800 CM
  NO 4CH  12475,8/11900 CM
  NO 5CH  10727,1/10300 CM

E.TYPE OF H.COVER/HOLD DIMENSION AND HOLDWISE FLOOR DIMENSION
  ON TANKTOP(EXCLUDING BOTH SIDE HOPPER PART-SLOPPING PLATE):
  L X B(FWD/MID/AFT EACH) X H:
  TYPE: FORE AND AFT FOLDING TYPE
  HOLD DIM:
  NO1 L 26,56 X W 23,00

11

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

NO2 L 28,98 X W 23,20
NO3 L 28,98 X W 23,20
NO4 L 28,98 X W 23,20
NO5 L 26,56 X W 23,20

FLAT TANK TOP DIMENSIONS IN MTRS:
NO1 : 25,2 X 23,0 AFT X19,2 MID/10.0 FORE
NO2 : 26,6 X 23,4    "         "
NO3 : 26,8 X 23,4    "         "
NO4 : 27,8 X 23,4    "         "
NO5 : 26,2 X 11,8 AFT X 20,0 MID/23,0 FORE

F.NBR/TYPE OF CARGO GEAR, SLEWING/HOISTING SPEED OF GEARS:
4 HH / 25 MT
HOISTING SPEED: 25 T X ABT 12 M/MIN
                15 T X ABT 18 M/MIN
                5 T X ABT 36 M/MIN
SLEWING SPEED:  APROX. 0,65 R.P.M

G.HOLD/DECK CONDITION (PADEYES/STANCHIONS/BULWARKS/LASHING MTRLS):
HOLDS: PADYES - NO STACHIONS
DECK: PADYES AND CASES FOR STACHIONS
LASHING MATERIAL : NOT AVAILIABLE

H.CLEAR DECK SPACE FOR DECK CGO:
5,8 MTR EACH SIDE

I.OWRS CNFM VSL'S H.COVERS NOT SIDE ROLLING N SIDE OPENING:
CONFIRM

J.OWRS GTEE GEAR CAPA TB SWL AS DESCRIBED:
CONFIRM

K.BUNKER CONSUMPTION AT SEA AND IN PORT BSS IDLE/WOKG(24HRS)
AT SEA LADDEN: 13,0 KNTS 23,0 MT
AT SEA BALLAST : 13,0 KNTS 20,0 MT
IDLE: 2,5 MGO
AT PORT 4 GEARS WORKING 24HRS : 7,5 MGO

L.MAX CONST INCL FW:
500 MT

M.TANK CAPA(100 PCT) FOR IFO/MDO.MAX TAKABLE QTY IN MT:
IFO: 2080,4 M3
MGO:  181,4 M3

N.LAST 6 CGOES/VSL'S ITINRY UPTO DELY INCL AGT STYLE AT PRESENT PORT
LAST 6 CARGOES : SUGAR(LAST),IRON ORE,MET COKE,ALUMINA,YELLOW CORN AND
MILO,MET COKE
ETA INCHON 16TH ETC 20TH.AGENTS BONGAM SEOUL

O.VSL'S CLASS/IMO NBR/EX-NAME IF ANY/CALL SIGN/INMARSAT
NBR(TLX/TEL/FAX):
LLOYD'S/8316223/NONE/SYCN/
TEL: 1130134 INMARSAT A
TLX: 1130134    "
FAX: 1130134    "
MINI-M TEL: 762337624
       FAX:762337625

P.LAST D/DOCK: 21.11.2002

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

DATE, S/S DATE: 12.01.2001

Q.NBR N NATIONALITY OF MASTER/OFFICERS/CREW/NAME OF MASTER:
   GREEK/GREEK/GREEK + PHILIPPINO/M.KARAFOTIAS

R.OWRS' PNI CLUB/HNM VALUE:
   L.S.S.O./21 MILLION US $

S.PLS CNFM IF OWNRS HV ISO CERTI N CARGO SECURING MANUAL ONBOARD:
   ISO CERTIFICATION: NO
   CARGO SECURING MANUAL : YES

T.PLS CONFIRM IF VESSEL IS CO2 FITTED IN ALL HOLDS:
   CONFIRM FOR FIREFIGHTING PURPOSES ONLY

U.PLS CONFIRM IF VSL IS CEMENT HOLE FITTED:
   CONFIRM

-Owners guarantee that:-
   -Vessel is single deck self trimming bulk carrier and bridge and engine room after.
   -Vessel tanktop is flat and suitable for grab discharge.
   -Vessel's holds are to be clear of any fitting/super structures such as cardeck curtain plates, container
     fitting whatsoever.
   -Vessel's not black listed by trading countries due to vessel's flag/ownership/operators/age and whatsoever.
   -Vessel has not relation to ex-Yugoslavia in vessel's flag/ownership/crew/etc.

-Owners confirm that vessel is classed highest Lloyds or equivalent, fully P & I insured for the duration of the voyage. Owners confirm that vessel is ISM certified. Owners to provide P & I and ISM certificate.

-The vessel is ITF covered and Australian hold ladders and WWF fitted and Australian gear clause in order.

## Clause 45. Double Banking
Charterers have the right to load and/or discharge on double banking basis or by any other means available at loading and/or discharging port or place always subject to Master's reasonable satisfaction and any additional equipment/facilities such as fenders whenever considered necessary by the Master are to be supplied by the Charterers in their time and at their expense.   If at any time during the operation, the Master reasonably considers it unsafe to continue due to adverse weather conditions etc. he may order the other vessel(s) and/or barge(s) away from his vessel or remove his own vessel in order to avid prejudicing the safety of the vessel(s). Any additional insurance premium, if required by vessel's Underwriters to be for
Charterers' account.

Discharge of cargo into lighters to be considered as the delivery of the cargo under the relevant bills of lading. Charterers hereby indemnify the Owners and the vessel against all cargo claims caused by barging/lightering operation.

## Clause 46
Charterers and/or their agents have option to sign Bill(s) of Lading on behalf of master in accordance with Mate's Receipts without prejudice to this Charter Party.

## Clause 47 I.T.F/Boycott
In the event of the vessel being denied or restricted in the use of port and/or loading and/or discharging, facilities or shore labour and/or tug or pilotages assistance or any other restriction, detention or any loss of time whatsoever due to boycott or arrest of the vessel or due to government restrictions, all caused by the vessel and/or by reason of the terms and conditions on which members of the crew are employed or by reason of any trading of this or any other vessel under same ownership or operation or control, the payment of hire shall cease for the time thereby lost and all extra expenses incurred due to above are to be for Owners' account and may be deducted from hire. Owners are also responsible for any claim that may be presented by

13

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

third party. Vessel has P.O.E.A agreement.

## Clause 48 In Lieu of Hold Cleaning and C/E/V

Charterers shall have the option of redelivering the vessel without cleaning of hold against paying the Owners a lumpsum of US$4,000.00 in lieu of such cleaning including removal/disposal of normal dunnages.

If required by Charterers, provided shore rules permit, intermediate hold cleaning shall be done by the crew. The crew will endeavor best in the same efficient manner to clean the holds to Charterers satisfaction but vessel/Owners not to be in any way held responsible if the holds fail any cleanness surveys, Charterers to pay Owners lumpsum of USD700 per hold for such cleaning any intermediate removal/disposal of normal dunnages always to be done by crews.

Cable/victualling/entertainment USD1,200 per month pro rata excluding alcoholic drinks and cigarettes.

## Clause 49 Inspection

The Charteres and/or their Supercargo to measure vessel's tanks and to sound bunkers tanks as required,. Whenever required, the Master must bring the vessel to an even trim to ensure correct bunker soundings, the Charterers and/or their supercargo(es) and/or surveyor(s) to have access to the vessel's deck and engine log books, tank plans, calibration scales, and/or other plans as requested and are allowed to make copies of the original log books.

## Clause 50 War Risk Insurance

Basic annual war risks insurance premium for worldwide trading to be for Owners account however any additional war risk insurance premiums incurred by reason of vessels trading under this Charter Party, also crew war bonus, to be for Charterers account and to be paid prior to entering any zone subject to additional premium against owners debit note. Original invoice(s) to be provided upon receipt.

Owners war risk underwriters are the Hellenic mutual war risk association

## Clause 51 NAABSA CLAUSE

Charterers have the option to trade vessel in RIVER PLATE only where vessels of similar size customarily lie safely aground. Owners have option to arrange inspection of vessel's bottom and underwater parts by diver and/or class surveyor at a convenient port if vessel has touched bottom at the NAABSA port. If any damage is found to vessel's bottom or underwater part, any extra time incurred and expense for such inspection shall be for Charterers account. If no damage is found to vessel's bottom or underwater part, any extra time incurred and expenses for such inspection shall shared equally between Owners and Charterers.

## Clause 52

BIMCO ISM/BIMCO STANDARD AMS and BIMCO STANDARD ISPS clause to be applied of this Charterers Party.

## Clause 53 Liability Insurance

The Charterers shall not be responsible for loss of life nor personal injury nor arrest or seizure or loss of or damage to the vessel, her cargo and/or other objects arising from perils covered by the usual policies of insurance, unless such loss or damage arises as a result of negligence on part of the Charterers, their servants or their agents and/or contravention of this Charter Party.

## Clause 54 Loading of Steel

Should the vessel be nominated to load a cargo of steel, Owners to appoint a P & I Club surveyor to establish the condition of the cargo prior to shipment. Remarks, if any, to be inserted into the Mate's receipts. Cost of such survey shall be shared equally by Owners and Charterers.

## Clause 55 Notices

Owners are to give Charterers 7/5/3/2/1 days definite notice of vessel's delivery and are to let Charterers know immediately of any change in vessel's position.

14

## RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

### Clause 56 Off-hire

Should the vessel put back whilst on voyage by reason of an accident or breakdown, or in the event of loss of time either in port or at sea or deviation upon the course of the voyage caused by sickness of or accident to the crew or any person onboard the vessel (other than passengers or supercargo traveling by request of the Charterers) or by reason of refusal of the Master or crew to perform their duties, or by reason of salvage, stowaway or oil pollution even if alleged, or capture/seizure, or detention by any authority/legal process except if caused by Charterers, the hire shall be suspended from the time of the inefficiency until the vessel is again efficient in the same or equidistant position, and voyage resumed therefrom. All extra expenses incurred including bunkers consumed during period of suspended hire shall be for Owners' account.

### Clause 57 Oil pollution

Owners guarantee to provide and maintain, during the entire time charter period, at their expense and carry on board the vessel a valid US Certificate of Financial Responsibility in compliance with requirements of U.S.Water Quality Improvement Act of 1970 and OPA90 and any amendments thereto. Owners also guarantee to have secured current certificates for other countries/federal states or municipal or other division or authority thereof, where guarantee are required. All such certificates to be valid throughout the entire time-charter period.

The Charterers shall in no case be liable for any damages as a result of the Owners' failure to obtain the aforementioned certificates. Time lost by non-compliance to be considered as off-hire and may be deducted form hire and Owners hold Charterers harmless against any direct consequential losses, damages or expenses.

### Clause 58 On/Off Hire Survey

On and off-hire surveys shall be held jointly between Charterers and Owners by one single independent surveyor to be mutually agreed. On-hire survey to be held in Owners' time at delivery port unless loading is taking place simultaneously in which case actual time for loading to count and off-hire survey to be held in Charterers' time at last discharge port before redelivery. Expenses for on/off-hire survey to be equally shared between Owners and Charterers but Owners to have the right to appoint master/ chief.engineer to act on their behalf.

### Clause 59 Panama/Suez Canal

Owners warrant that the vessel is fitted for the transit of the Suez and the Panama Canal. Should the vessel not meet these, Charterers may suspend hire for all time lost and Owners to pay all expenses resulting from such failures as a consequence thereof.

### Clause 60 Plans

Charterers will connect with Master directly for capacity plan, deadweight scale and general arrangement plan. Owners will instruct Master to give his best cooperation..

### Clause 61 Power Clause

Forklift trucks/bulldozers/grabs/magnets etc shall be allowed to be used in the holds if necessary. Weight of same, does not exceed vessel's strength capacity.

### Clause 62 Protective Clause

The New Both-to-Blame Collision Clause, the New Jason Clause, Baltic Conference War Risks Clauses for Time Charterers 1993(Code name: Conwartime 1993), P&I Bunkering Clause, as applicable and attached are all to be considered as part of this Charter Party and all Bills of Lading issued under this Charter shall be subject to all said clauses and contain Voywar 1993.

The USA/Canadian Clause Paramount as applicable, or the Hague Rules as enacted in countries other than the USA or Canada as applicable to be incorporated in all Bills of Lading, except where Hamburg rules are mandatory.

### Clause 63 Punctual Payment

First hire and value of bunkers to be paid within 3 banking days after vessel's delivery and receipt of original

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

charter party and hire invoice in Seoul.   Charterers are entitled to deduct from last sufficient hire payments estimate Owners' disbursements USD2,000.- per port(but maximum USD8,000.- in total) as well as estimated bunker on redelivery.

Notwithstanding anything contained herein to the contrary, it is understood that if at any time during the currency of this Charter the hire payment shall become due on a Saturday, Sunday or Holidays or outside normal banking hours, payment of hire may be made on the last banking day prior to the date on which hire became due and such payment shall stand as "punctual and regular payment".

## Clause 64 Sea Carrier Initiative Agreement
Owners and Charterers confirm they are both signatories to the Sea Carrier Initiative Agreement in order to cooperate with the U.S. Customs Service in the fight against the drug menace.

## Clause 65 Smuggling.
Owners to be responsible for any consequences owing to smuggling on board by vessel's officers and/or crew and Charterers to be responsible for any consequences owing to smuggling on board by Charterers agent and/or servants.

## Clause 66. Stevedore Damage
Charterers shall not in any event be liable for claims in connection with stevedore damage suffered by the vessel and/or equipment unless :

A)    Master advises Charterers or their Agents in writing or by cable within 48 hours of occurrence of any damage for which the Master considers Charterers liable so that Charterers may claim against Stevedores or parties responsible. In case of hidden damage, same to be reported as soon as discovered, but always prior redelivery.

B)    Such damage shall have been entered in vessel's logbooks and

C)    Master shall also have held stevedores or parties responsible for damage liable in writing or by cable with copy to Charterers. If extent to damage cannot be ascertained on occurrence, Owners/Master must report occurrence of damage in accordance with (A), (B) and (C) as above and details may follow when examination possible. If at time of redelivery there remains outstanding damage for which Charterers may be liable but which, without affecting the seaworthiness or trading of the vessel, can be repaired by Owners at any convenient time after redelivery, Owners undertake to accept redelivery under Clause No. 4 of this Charter party.

If redelivery is accepted as above, Charterers undertake to reimburse Owners cost of repairs against the production of repair's bill by repairer's or dock yard unless otherwise agreed when repairs carried out and liabilities established.

## Clause 67 Taxes
Taxes and/or dues and/or charges whatsoever, imposed on cargo by any local or national authorities, arising out of trade under this Charter Party to be borne by Charterers, Taxes levied by governments other than that of Owners' domicile or vessel's flag on earning under this Charter Party other than the hire payable to Owners shall be for Charterers' account.

## Clause 68 Trading exclusions
Worldwide trading always within  I.W.L. excluding Abkhazia, Albania, Angola, Cambodia, Cuba, Eritrea, Ethiopia, Haiti, Iraq(un/wfp approved cargoes to be allowed), Iran (north of bushire), Israel, Laos, Lebanon, Liberia, Libya, North Korea, Sierra Leone, Somalia, Sri Lanka(excl vessel's calling Colombo for bunkers only), Sudan, Syria, Turkish occupied Cyprus, Yemen(excluding vessel's calling Aden for bunkering  only), Yugoslavia and former Yugoslavia republics and pacific C.I.S ports, Zaire,  any war  or war like zone , and any countries against vessel's registry and/or under sanctions imposed by U.N

All war, warlike, war declared zones and other countries having hostilities with vessel's flag are excluded, but the Charterers have option to call the same area subject to Owners'/Master approval which is not withheld unreasonably and additional war risk premium arising therefrom to be paid in accordance Clause 50.
Non certified ISPS ports always excluded.

16

## RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

### Clause 69 Warranties
Owners warrant that the vessel:
-Is not blacklisted by Arab league countries nor any where else within the agreed trading limits.
-Has not traded Cambodia, Cuba, Israel and North Korea.
-Is eligible for bunkers in The United States of America, its territories and possessions, in accordance with directive form The United States Department of Commerce, office of International Trade.
-Is a single deck self trim bulk carrier and can load a full and complete cargo in each hold according to latest SOLAS regulations, extra trimming if required to be solely at Owners risk/time and expenses.

### Clause 70 Watertight Hatches
Owners warrant that vessel's hatch covers are to be watertight all throughout this Charter period. If reasonably required by Charterers, crew to apply marine tapes for hatch sealing on top (meet-joint) and side of all hatch covers before sailing for the ocean as supplied by Owners for their account. If any hatch cover found defective, same should be rectified at Owners' time and expenses to class surveyor's satisfaction. Charterers have the right to carry out hose test on all hatches upon arrival first loadport under this Charter Party at their time and expense.



### Clause 72
Owners guarantee that the condition of crew's employment is in accordance with the rules/regulations which the vessel may call under this charter. Should the vessel be delayed, Boycotted or Charterers operations interrupted due to Owners failure to meet such rules/regulations, any loss of time will be considered off-hire and any extra cost/expenses include stevedore's standby time to be for Owners' responsibility and account.

### Clause 73 Arbitration
All disputes arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London.

Unless the parties agree upon a sole arbitrator the reference shall be to two(2) arbitrators, one to be appointed by each of the parties. The arbitrators shall be commercial men and the umpire, if appointed, shall be commercial man and shall be members of the London Maritime Arbitrators' Association or otherwise qualified by experience to deal with commercial shipping disputes.

The contract is governed by English Law and there shall apply to arbitration proceedings under this clause the terms of the London Maritime Arbitrators' Association current at the time when the arbitration proceedings are commenced.

It is further agreed that the seven (7) days limit for appointment of the arbitrator, dither originally or by substitution, shall be change to thirty(30) days.

In the event the amount of claim and counter claim does not exceed US$50,000.- the parties agree to refer any dispute to a sole arbitrator in accordance with the "small claims procedure" of the London Maritime Arbitrators' Association.

### Clause 74
In the event of cargo handling gear deficiency, Charterers have the right to continue working the vessel by using shore equipment, in which event the vessel shall on hire. However Owners shall reimburse Charterers)

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

by deduction from hire) for all extra costs incurred and properly substantiated, which arise as a consequence of using shore equipment. Furthermore any time lost due to inefficiency in working the vessel shall be deducted from the hire on a prorata basis,

## Clause 75 ADMIXTURE CLAUSE

While Charterers have the option to load two or more cargoes in the same holds Charterers are to supply, erect, dismantle and dispose of any and all separations required, at their risk and expense.
Notwithstanding any other provisions in this Charter Party, any claims arising from contamination or sweat damage or admixture to cargo carried in the same hold to be for Charterers account. Should Charterers be permitted to load containers, Owners are not to be responsible for stowage of cargo in containers, NOR for cargo claims arising therefrom. Owners are not to be responsible for stuffing or unstuffing of containers.

## Clause 76 Agency Clause

Owners have the right to use Charterers agents for vessels normal husbandry affairs without paying a separate agency fee though it is clearly understood that Owners will pay for any services actually provided at customary cost.

## Clause 77 HAMBURG RULES CLAUSE

Neither the Charterers NOR their agents shall permit the issue of any Bill of Lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or on behalf of any Sub-Charterers) incorporating, where not compulsorily applicable, the Hamburg rules or any other legislation giving effect to Hamburg rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby rules. The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

## Clause 78 HIRE PAYMENT CLAUSE

Hire/freight to be paid net of remitting bank charges to Owners bank in Greece as follows:-
Value of bunker on delivery to be paid together with first hire payment.

Owners bank:-

CITIBANK N.A
47-49 Akti Miaouli
185-36 Piraeus
Greece
Swift No. CITIGRAA A/C 0/402323/027
in favour of NEREUS SHIPPING S.A.
corresponding bank
CITIBANK NEW YORK
SWIFT No. CITIUS33 ABA No.021000089

## Clause 79 ICE CLAUSE

The vessel is not to be ordered to nor bound to enter any ice bound place or any place where lights, lightships, marks, or buoys are, or are likely to be, withdrawn by reason of ice on the vessel's arrival or where there is risk that ordinary the vessel will not be able, on account of ice, to reach the place or get out after having completed loading or discharging. The vessel not to be obliged to force ice, or to follow ice breakers. If on account of ice the master considers it dangerous to remain at the loading or discharging place for fear of the vessel being frozen in and/or damaged, he has liberty to sail to a convenient open place and await the Charterers' fresh instructions. Detention and/or damage from any breach of the above to be for the Charterers' account.

## Clause 80 IMO clause

The Charterers are to provide the master with any evidence he may reasonably require to show that the cargo is packed, labeled, loaded stowed, carried and discharged in accordance with IMO and IMDG regulations, requirements and recommendations including code of safe practice for solid bulk cargoes-bc code, failing which the master is entitled to refuse to load such cargo or, if already loaded, to unload it at Charterers risk

18

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

and expense. In case IMO/IMDG or local and/or national authorities require special documentation for any cargoes covered by IMO codes, Charterers are to be responsible for obtaining same at their time and expenses in the event that Charterers load IMO and /or IMDG listed cargoes (always in accordance with the Charter Party- see also cargo exclusions clause) then they are to reimburse Owners for any extra expenses incurred by Owners as a result of same.

## Clause 81 WAR CANCELLATION

It major war breaks out between any tow or more of the following countries: GREECE, UK, USA, CIS, peoples republic of China, Japan, directly affecting the performance of this charter, both the Owners and the Charterers shall have the option of cancelling this charter with sufficient explanation to the other party whereupon the Charterers shall redeliver the vessel to the Owners, if she has cargo on board after discharge thereof at destination, or, if debarred from reaching or entering it, at a near open and safe port as directed by the Charterers. In all cases hire shall be paid until the vessel's redelivery.

## Clause 82

Owners guarantee to accept to stow 2 tiers high of 15 average ton unit weight steel Coils (HRC, CRC, GIC and ETC) on tank top provided always subject to vessels max tank top strength as given and subject sufficiently proper dunnaging.

## Clause 83 BIMCO STANDARD ISM CLAUSE FOR VOYAGE AND TIME CHARTER

From the date of coming into force of the international safety management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that the vessel and 'The Company' (as defined by the ISM code) shall comply with the requirements of the ISM code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and safety management certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of 'The Company' to comply with the ISM code shall be for the Owners' account.

## Clause 84 Bimco Standard Year 2000 Clause

"Year 2000 Conformity" shall mean that neither performance nor functionality of computer systems, electronic and electro-mechanical or similar equipment will be affected by dates prior to or during the Year 2000. Without prejudice to their rights, obligations and defenses under this Charter Party including, where applicable, those of the Hague or Hague-Visby Rules, the Owners and the Charterers, and in particular the Owners in respect of the vessel, shall exercise due diligence in ensuring Year 2000 conformity in so far as this has a bearing on the performance of this Charter Party.

## Clause 85

GMT to apply for hire calculation.

## Clause 86 Charterers Additional Clause

A. If the vessel is off-hire for a consecutive period of 15 days, Charterers have the right to cancel this Charter party without any further obligations under this contract on the part of the Charterers, provided no cargo remaining on board.

## B. ADDING OFF-HIRE PERIOD

Should vessel be placed off-hire during the currency of this charter for any reason whatsoever, Charterers have the option of adding such off-hire time to the charter period.

C. Charterers guarantee vessel to remain in seaworthy trim for shifting between loading ports and berths and between discharging ports and berths to Master's satisfaction.

D. Owners warrant that the vessel is a self-trimming bulk carrier suitable for carrying grain in all holds without requiring any grain fittings and/or bagging/securing/strapping as per the grain loading booklet.
/// END ///

19

# RIDER CLAUSES TO M.V. "EMERALD"/KLC
# CHARTER PARTY DATED 15TH OCTOBER, 2004

## GENERAL AVERAGE AND THE NEW JASON CLAUSE

General Average shall be adjusted according to York/Antwerp Rules, 1950, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply.

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible by statute contract, or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of   the goods.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers consignees or Owners of the goods the Carrier before delivery.

## BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Bill of Lading falls to be determined in accordance with the laws of the United States of America, the following clause shall apply: -

## New Both-to-Blame collision Clause

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation in the management of this ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by   the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier".

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or, in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

## P&I Club Oil Bunkering Clause

The vessel in addition to all other liberties shall have liberty as part of the contract voyage and at any stage thereof of to proceed to any port or ports whatsoever, whether such ports are on or off the direct and/or customary route or routes to the ports of loading or discharged named in this charter and there take oil bunkers in any quantity in the   discretion of owners even to the full capacity of fuel tanks, deeptanks and any other compartment in which oil can be carried, whether such amount is or is not required for the chartered voyage.

## RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

### BIMCO Standard War Risks Clause for Time Charter, 1993
### Code Name: "CONWARTIME 1993"

1. For the purpose of this Clause, the words:

    a) "Owners" shall include the shipowners, bareboat Charterers, disponent owners, managers of other operators who are charged with the management of the Vessel, and the Master; and

    b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or
against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgment of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

2. The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgment of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3. The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent right of search and/or confiscation.

4. a) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

    b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5. If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

6. The Vessel shall have liberty: -

    a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destination, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

    b) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

## RIDER CLAUSES TO M.V. "EMERALD"/KLC
## CHARTER PARTY DATED 15TH OCTOBER, 2004

c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

d) to divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

e) to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

7. If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8. If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter party.

# Exhibit 2

NEREUS SHIPPING S.A.
M/V "EMERALD"
KOREA LINE
C/P 15.10.04


NEW
List

PRELIMINARY FINAL HIRE STATEMENT

|  | DEBIT (IN US$) | CREDIT (IN US$) |
|---|---|---|
| HIRE FM : 22.10.04 01:10 GMT (10:10 LT) | | |
| TO: 02.01.06 13:30 HRS GMT | | |
| 323.50855 D x $   28.500 | $  8,537,537,03 | |
| 86,976833 D x $   15.000 | $  1,304,652,50 | |
|  |  | $  248,303,98 |
| LESS :   2.50% ADD. COMMISSION | | |
| | | |
| PLUS BUNKERS ON DELIVERY | 166,186,00 | |
| F.O. MT   833,90   x $ 290 | 24,400,00 | |
| D.O. MT   61,00   x $ 400 |  | $  190,580,00 |
| | | |
| LESS BUNKERS ON REDELIVERY | 150,440,00 | |
| F.O. MT   752,2   x $ 209 | 28,680,00 | |
| D.O. MT   72,2   x $ 400 |  | $  179,320,00 |
| | | |
| PLUS | | |
| ILOHC | $  62,530,90 | |
| CV/E | $  16,411,06 | |
| | | |
| LESS EXPS FOR OWNERS ACCOUNT | | |
| D/A #D31.12.04 | | $  59,43 |
| D/A 17713.10.05 | | $  2,179,89 |
| C/N 1378 BUNKERS ROS. ON DELRDL | | $  6,666,03 |
| C/A 482.03.05 - ON HIRE SURVEY | | $  316,25 * |
| | | |
| PLUS : EXPS FOR CHARTERERS ACCOUNT | | |
| INV 2383 | $  1,106,63 | |
| INV 2509 | $  6,000,00 | |
| INV 2520 | $  350,00 | |
| INV 2521 | $  10,099,06 | |
| INV 2527 | $  2957,21 | |
| INV 2562 | $  3228,23 | |
| INV 2642 SUGAR + SPIR. | $  1282,73 | |
| INV 2656 ADDIT. PREM. WR AT BALIKPAPAN | $  4300 | |
|  |  | $  9,415,317,98 |
| LESS AMOUNT COLLECTED | | |

|  |  | DEBIT | CREDIT |
|---|---|---|---|
| TOTAL |  | $ 10,171,474,41 | $ 9,850,954,54 |
| BALANCE DUE TO OWNERS |  |  | $ 320,519,87 |

Prepared by Shipping Accounts Dept

5/4/2006

* Difference from previous est

3

NEREUS SHIPPING S.A
M/V "EMERALD"
KOREA LINE
C/P 15.10.04

## AA.   CHRTS HAVE DEDUCTED FROM HIRE THE FOLLOWING:

| | | |
|---|---|---|
| 1). | OFF-HIRE (SPEED CLAIM TAMPA TO SUEZ) | 37.762,50 |
| | 2,5% COMM. | -944,06 |
| | OFF HIRE IFO | 6.069,60 |
| 2). | OFF-HIRE (FM SUEZ TO P.E.) | 119.250,00 |
| | 2,5% COMM. | -2.981,25 |
| | OFF-HIRE IFO | 20.700,00 |
| | OFF-HIRE DO | 4.500,00 |
| 3). | C/VE ON OFF-HIRES | 257,00 |
| 4). | EST O/A | -3.000,00 |
| 5). | EXPS FOR OWNERS NOT RECEIVED YET | 8.520,43 |
| | 2,5% COMM. | 213,01 |
| | OFF - HIRE KOHSICHANG - MINA SAQR | 22.394,97 |

| | |
|---|---|
| **TOTAL** | **224.622,20** |

## BB.   OWNER'S INVCS NOT UTILIZED BY CHRTS :

| | | |
|---|---|---|
| 1). | INV 2307 ILO/SC | 12.600,00 |
| 2). | INV 2383 CIG/SPIRITS | 1.193,30 |
| 3). | INV 2509 W/R | 6.605,90 |
| 4). | INV 2520 FRESH WATER | 350,00 |
| 5). | INV 2524 BUNKERS | 19.090,08 |
| 6). | INV 2527 STEVEDORS | 2.957,21 |
| 7). | INV 2562 CA/IE | 3.228,23 |
| 8). | INV 2568 ILO/SC | 30.000,00 |
| 9). | INV 2649   ILO/SC | 29.000,00 |
| 10). | INV 2636 W/R | 4.800,00 |
| 11). | INV 2648 cig/spir. | 1.282,76 |

| | |
|---|---|
| TOTAL | 92.323,78 |

| | |
|---|---|
| BANK CHRGS | -475,28 |

| | |
|---|---|
| TOTAL | 316.470,70 |

N.B: Item AA5 refers to P.EV. Exps not submitted by Chris but we are to pay direct
to agents through their D/As.